UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN ABDUL GILBERT,

      Petitioner,

  v.

STEVE SINCLAIR,

      Respondent.

Case No. C09-757-JCC-BAT

**REPORT AND
RECOMMENDATION**

## I. INTRODUCTION

Petitioner Kevin A. Gilbert, a Washington State prisoner, has filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2005 convictions for second degree murder and first degree assault. Dkt. 10. Respondent has filed an answer contending Gilbert's habeas petition should be dismissed because he failed to exhaust claims 2 and 4 and claims 1 and 3 lack merit. Dkt. 15. Gilbert has not filed a response. The Court, having reviewed the pleadings and the record recommends the petition be **DENIED** and this action **DISMISSED** with prejudice.

## II. BACKGROUND

The Washington Court of Appeals summarized the facts regarding Gilbert's case as follows:

Kevin Gilbert lived in apartment E-202 of the Meridian Ridge apartment complex. On August 24, 2002, Gilbert, his best friend, Damiean Clewis, Kassy Gordon, and two of her friends went to a party at Jon and Christine Hendersons' (collectively, the Hendersons) apartment, K-104.

At approximately 3:00 a.m., Aaron Below and Brent Weibl left a different party at Meridian Ridge. As they were walking through the complex, a young black man on a bicycle, named "LP" or "Red", approached Below and Weibl and told them about the party at the Hendersons'. The three of them decided to go to the Hendersons' apartment. When Weibl, Below, and Red arrived at the Hendersons', the party was ending and Clewis and Gilbert were outside on the patio. Weibl started talking to Clewis. At some point, Clewis got upset when Weibl called him "Cuz." Clewis told Weibl, "don't Cuz me, don't Cuz this, this BGD, this is BGD, don't Cuz me." Shortly thereafter, Below and Weibl left to go back to their party.

Weibl and Below told their friend Patrick Carlson what had occurred and asked Carlson to go back to the Hendersons' with them. On their way back to the Hendersons', Weibl, Below, and Carlson confronted Clewis and Gilbert in the area between buildings K and E. Clewis testified that at the beginning of the confrontation, someone asked Clewis whether Gilbert "had strap?" [state court's footnote: "Strap is a slang term for gun."] and he said "no." Clewis also testified that Gilbert was with him at the time but then left and walked towards his apartment. Below also testified that he heard someone say they were going to get a strap and that Gilbert left at some point during the conversation.

After Gilbert left, Clewis and Below fought. Clewis managed to get away from Below and ran to Gilbert's apartment to get him, but Gilbert was not there. Clewis then ran back to the area between buildings K and E. Carlson, Weibl, and Below were still there. After Clewis saw Gilbert standing near building K, Clewis ran over and punched Carlson in the face. Seconds after Clewis punched Carlson, a gun was fired, hitting Carlson in the chest. Below testified he saw a muzzle flash coming from the area near building K and the shooter was an African American male.

After the gunshot, Clewis ran up the hill toward Below. Below testified that as Clewis was running toward him, he saw a person running up the hill behind Clewis. Below also testified that Clewis did not have anything in his hands as he approached. After Clewis tackled Below, a second shot was fired hitting Below in the back. Carlson died from the gunshot wound to his chest. Below suffered severe internal injuries. The police recovered two .25 caliber shell casings from the area between buildings K and E. The police also recovered a box of .25 caliber

> ammunition from Gilbert's apartment. The number of rounds necessary to fill a magazine were missing from the box. Forensic scientist Evan Thompson concluded that the two .25 caliber shell casings the police recovered matched the bullets taken from Carlson and Below. Thompson also concluded the bullets were fired from the same gun, which was probably a Beretta. A close friend of Gilbert's testified that he sold Gilbert a .25 caliber Beretta a few weeks before the shooting.

Dkt. 16, ex. 3 and 4, Unpublished Opinion, *State v. Gilbert*, No. 57584-8-I, 138 Wash. App. 1060, 2007 WL 1589441 (Wash. App. June 4, 2007) (as Amended).

The jury found Gilbert guilty of second degree murder and first degree assault. *Id.* Gilbert appealed his convictions to the Washington Court of Appeals, Div. I ("court of appeals"). On direct appeal, Gilbert's lawyer argued his 6th and 14th Amendment rights were violated because the comments of prospective juror 10 tainted the jury pool and juror 8 was biased, and that he was denied due process of law because there was insufficient evidence to convict him. Dkt. 16, ex. 5. Gilbert also claimed in a pro-se statement of additional grounds that the search of his father's apartment was unlawful and that witness Clewis violated an in limine ruling excluding any references to gang membership. *Id*. ex. 6. The court of appeals denied Gilbert's appeal. Dkt. 16, ex. 3. The court of appeals subsequently amended the text on several pages of the opinion. *Id*. ex. 4.

Through counsel, Gilbert sought discretionary review in the Washington State Supreme Court ("state supreme court"). *Id*. ex. 10. Counsel argued review should be granted because the court of appeals erred in finding (1) Gilbert's 6th and 14th Amendments rights were not violated by a prospective juror's comments, (2) there was sufficient evidence to convict Gilbert, and (3) the search of Gilbert's father's house was lawful. Counsel also argued the court of appeals erred in finding Gilbert failed to properly preserve his claim that his due process rights were violated by the testimony of witness Clewis. *Id.*

REPORT AND RECOMMENDATION – 3

The state supreme court denied review without comment. *Id*. ex. 11. Gilbert subsequently filed, in the trial court, two motions to dismiss; he withdrew both motions before their merits were addressed. *Id*. ex 13-23.

On August 10, 2009, Gilbert filed the present amended petition for writ of habeas corpus. Dkt. 10.

## III. GROUNDS FOR REVIEW

Gilbert raises the following four grounds in his amended habeas petition:

1. "Petitioner's Convictions Arose From Insufficient Evidence To Support The Convictions." *Id.* at 6.

2. The Petitioner's Motion In limine Was Violated." *Id*. at 7.

3. Petitioner was denied the right to an impartial jury because "a biased juror was permitted to deliberate" and "one juror was in fact biased against petitioner and was outspoken about it on several occasions." *Id.* at 9.

4. "The Governmental Search of the Petitioner's Dad's apartment was unlawful." *Id*. at 11.

## IV. DISCUSSION

**A.    Exhaustion**

Respondent contends and the Court agrees that Gilbert failed to exhaust claims 2 and 4. Dkt. 15 at 5. This Court may not consider the merits of a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted his available state court remedies. 28 U.S.C. § 2254(b). "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

If a petitioner fails to properly present his federal claims to the state's highest court, and if he is procedurally barred from presenting those claims to the appropriate state court at the time of filing his federal habeas petition, the petitioner's claims are considered procedurally defaulted for purposes of federal habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

In order to properly present a federal claim to a state court, a state prisoner must specifically indicate to the state court that his claims are based on federal law. *See Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000). A habeas petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999) (*citing Anderson v. Harless*, 459 U.S. 4, 7 (1982). A petitioner does not exhaust a federal claim by raising a state claim that is similar to the federal claim: "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)

Here, Gilbert raised claims 2 and 4 on direct appeal but failed to indicate they were based on federal law. Rather, in a pro-se statement of additional grounds to state court of appeals, Gilbert articulated claim 2 as:

> The Appellant's motion in limine issue 4 "to exclude any reference to gang membership," was violated by the testimony of Mr. Clewis. At one point in his testimony he said, his reaction to being called Cuz was quote. I told em, don't call me Cuz, I'm not no Crip I'm not no blood, just leave me alone." 10-19-05 RP p. 129: 21-24. That statement is a reference to gang membership, requiring reversal. (See exhibit #1 attached).

Dkt. 16, ex. 6.

Gilbert articulated claim 4 as "the trial court erred in denying the defense motion to suppress the evidence seized at the residence of Charles E. Briggs due to an uninformed consent, requiring suppression and reversal." *Id.* The five page argument supporting this claim contains no references

1     to federal law.

2          As the party seeking habeas relief, Gilbert bears the burden of showing that he has properly

3 exhausted his claims. *Cartwright v. Cupp*, 650 F.2d 1103 (9th Cir. 1981). The record establishes

4 Gilbert failed to do so. On direct appeal in the state court of appeals, Gilbert made no references to

5 federal law in raising claims 2 and 4. Accordingly, the Court concludes Gilbert failed to properly

6 present claims 2 and 4 as federal claims on direct review in the state courts.

7          The Court recognizes that Gilbert raised claims 2 and 4 as federal claims in his discretionary

8 petition for review to the state supreme court. However, a petitioner does not fairly raise a federal

9 claim if he or she seeks review of the federal claim for the first time on discretionary review. *Casey*

10 *v. Moore*, 386 F.3d 896, 918 (9th Cir. 2004). Accordingly, because Gilbert raised claims 2 and 4 as

11 federal constitutional claims for the first time to the state's highest court on discretionary review, he

12 did not fairly present the claims to the state courts. The Court therefore concludes claims 2 and 4

13 are unexhausted.

14          The Court also concludes claims 2 and 4 are procedurally defaulted for purposes of federal

15 habeas review. As discussed above, Gilbert failed to exhaust claims 2 and 4. State law bars him

16 from presenting and attempting to exhaust those claims in the state court, now, because of the state

17 statute of limitations and prohibition against successive personal restraint petitions. *See* RCW

18 10.73.090 and 140. Accordingly, claims 2 and 4 are procedurally defaulted for purposes of federal

19 habeas review and may not be considered by this Court.

20          Even if Gilbert had exhausted these claims, they lack merit and should be dismissed.

21 Gilbert argues in claim 4 that the search of his father's residence violated the Fourth Amendment.

22 Dkt. 10 at 11. Before his trial began, Gilbert moved to suppress evidence seized from his father's

23 residence. The trial court conducted an evidentiary hearing, heard from witnesses subject to

examination by the parties and permitted the parties to argue.  Dkt. 16, ex. 25.  Where a habeas

petitioner has had a full and fair hearing on a Fourth Amendment Claim, as Gilbert has had in this

case, habeas relief is not available.  *Stone v. Powell*, 428 U.S. 465 (1976).  Claim 4, alleging a

violation of the Fourth Amendment, is therefore not cognizable and should be dismissed.

        In claim 2, Gilbert argues his due process rights were violated when "petitioner's motion in

limine was violated."  Dkt. 10 at 7.  Before any witness was called, the trial court granted Gilbert's

motion in limine to exclude any reference to gang membership.  The evidence showed that Clewis

and Gilbert got into a confrontation with three individuals including the two victims who were shot.

Clewis, who was called as a prosecution witness, was asked, "did something go on between the

three white guys and yourself and Kevin [Gilbert], was anything said among you?"  Dkt. 16, ex. 30

at 129.  Clewis said, "not besides them calling me Cuz, and that's it."  When asked about his

reaction to being called Cuz, Clewis stated "I told 'em, don't call me Cuz, I'm not no Crip, I'm not

no Blood, just leave me alone."  When asked "so it's fair to say you took it as an insult?"  Clewis

responded "Yes I did."  *Id*. at 129-130.  Gilbert's lawyer did not object to the testimony.

        Clewis' statement does not require reversal.  In order for the Court to grant habeas relief,

Gilbert must establish that the alleged trial error had a substantial and injurious effect or influence

on the jury's verdict.  *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) (*citing Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993).  Here, however, Clewis did not state or imply that Gilbert

was a gang member or that gangs were involved in the victim's shooting.  Instead he said he was

not a gang member and that he was insulted by the victim's comments.  If anything, Clewis'

statement implied that his friend Gilbert was also not a gang member.  Additionally, the prosecution

never argued or implied Gilbert was a gang member and that the jury should convict him because of

gang membership.  Accordingly, the Court concludes Clewis' statements did not have a substantial

and injurious effect or influence on the jury's verdict and that claim 2 should therefore be dismissed.

**B.     Standard of Review**

Respondent admits Gilbert has exhausted claims 1 and 3.  A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005).  Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct.  28 U.S.C. § 2254(e)(1).  A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When applying these standards, a federal habeas court

reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

The Court retains the discretion to determine whether an evidentiary hearing is appropriate. *Downs v. Hoyt*, 232 F.3d 1031, 1041 (9th Cir. 2000). Gilbert has not requested an evidentiary hearing. Following an independent review of the record, the Court concludes that an evidentiary hearing is unnecessary as the issues in this case may be resolved by reference to the state court record.

**C.      Claim 1:  Sufficiency of evidence to support the conviction**

Gilbert was convicted of murder in the second degree and first degree assault. He does not argue there is insufficient evidence that some person committed the crimes of murder and first degree assault. Rather, Gilbert contends there is insufficient evidence to prove he was the person who committed these crimes. Specifically he claims "[t]he fact that no witnesses at scene that the time of the shooting "ID's" the Petitioner as the one who had a gun that night or witnesses him shoot the victims in this Case makes the Evidence in the case Insufficient for a Conviction to Stand." Dkt. 10 at 6. This is the same argument Gilbert raised on direct appeal in the state court of appeals. Dkt. 16, ex. 3.

To prevail on this claim, Gilbert must show that "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 324, (1979), and that "the state court's adjudication [of petitioner's challenge to the sufficiency of the evidence] entailed an unreasonable application of the quoted *Jackson* standard." *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Id.* at 319.

If the record supports conflicting inferences, the Court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. A jury's credibility determinations are entitled to "near-total deference under *Jackson*." *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004). The Washington State standard for determining sufficiency of evidence to support a conviction is identical to the federal standard. *State v. Joy*, 121 Wash. 2d 333, 338 (1993) ("In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

When a state court has determined a sufficiency of the evidence claim, the Ninth Circuit has held that the AEDPA requires an additional degree of deference to the state court's decision. Consequently, habeas relief is not warranted unless "the state court's application of the *Jackson* standard [was] 'objectively unreasonable.'" *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 n.13 (9th Cir. 2005) (as amended), *cert. denied*, 546 U.S. 1137 (2006).

After a careful review of the record the Court concludes that the state court's determination that the evidence was sufficient to support Gilbert's convictions and was not an unreasonable application of the *Jackson* standard. As discussed below, when viewing the evidence in the light most favorable to the prosecution, the Court finds that a rational trier of fact could have reasonably determined beyond a reasonable doubt that Gilbert committed the crimes.

### 1. The state court's findings

The state court of appeals made following findings regarding the sufficiency of the evidence that Gilbert committed the crimes:

Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences against Gilbert, the evidence establishes Gilbert was the shooter. During the confrontation between Below, Carlson, Weibl, Clewis, and Gilbert, Clewis asked Gilbert where his gun was. Below testified he heard someone say they were going to get a gun and saw Gilbert run off. Kassy Gordon testified that after Gilbert returned to the apartment, Gilbert went into the bedroom and she heard him open the closet door and heard the racking (cocking) of a semi-automatic handgun. After Gilbert left, Kassy testified that a minute later, she heard two gunshots.

Meanwhile, Clewis ran to Gilbert's apartment, but he was not there. But after Clewis returned to the area between buildings K and E, he saw Gilbert and decided to attack Carlson. Seconds later, a shot was fired, hitting Carlson. Below testified the shot came from the area where Clewis saw Gilbert standing. The shot was fired by an African American male. Below further testified that as Clewis was running up the hill toward him, another male was running behind Clewis. According to Below's testimony, there was nothing in Clewis' hands. Shortly after Clewis tackled Below, someone fired a shot, hitting Below in the back.

The police recovered two .25 caliber shell casings from the area between building K and E, where Clewis saw Gilbert standing. The police also recovered a box of .25 caliber ammunition from Gilbert's apartment, which was missing the number of rounds necessary to fill a magazine. The two .25 caliber shell casings recovered by the police matched the bullets taken from Carlson and Below. Thompson testified the bullets were fired from the same gun, probably a Beretta. Gilbert purchased a .25 caliber Beretta two weeks before the shooting. All of the reasonable inferences that the jury could draw from this evidence proved that Gilbert fired the shots.

Dkt. 16, ex. 3.

### 2. Analysis

The evidence presented at trial establishes a rational trier of fact could have found Gilbert was the shooter beyond a reasonable doubt.

The evidence shows Gilbert had been involved in a confrontation with the victims and saw his friend Clewis scuffling with Below at the Meridian Apartments. Dkt. 16, ex. 31 at 78, 80, 135-

36.  Below said he heard "someone announcing they are going to go get strap [a gun], or somebody said to go get strap."  *Id.* at 78.  Clewis testified that as the scuffle began, Gilbert left and was headed towards his apartment.  *Id*. ex. 30 at 132.  Kassey Gorden testified Gilbert went into his apartment bedroom and that she heard the sound of a gun being cocked.  Dkt. 16, ex. 29 at 79.  Gorden testified that "seconds or a minute" after Gilbert left the apartment she heard two gunshots.  *Id.*  About two minutes after the shooting, Gilbert and Clewis ran up to the Hendersons who had a unit at the Meridian Apartment complex.  *Id*. ex. 29 at 21-22.  Ms. Henderson said Clewis told Gilbert "that they needed to go and get outta there."  *Id*.

Police subsequently recovered, from Gilbert's apartment, a box of ammunition with six missing .25 caliber rounds.  *Id.* ex. 30 at 12-16; ex. 41 at 56-59.  Police also recovered .25 caliber shell casings at the scene of the shooting.  *Id*. ex. 29, at 40-44.  A .25 caliber bullet was recovered from the murder victim.  *Id.* ex. 31 at 38; ex. 32 at 140.

A firearms expert testified that the bullets from the box of ammunition found in Gilbert's apartment were consistent with the shell casings found at the scene of the shooting.  *Id*. ex. 31 at 42-43. The expert also testified the bullets could have been fired by a .25 caliber Beretta.  *Id*. at 45. Two weeks before the shooting, Gilbert had purchased a .25 caliber Beretta pistol.  *Id*. ex. 29 at 24; ex. 32 at 56.

Gilbert argues "two witnesses at the scene believed 'Red' the man known to all witnesses as the man having a bike that night, was the shooter and not Petitioner."  Dkt. 10 at 6.  One of the witnesses, Below, testified he did not see who shot him but admitted on cross-examination that initially he thought Red had shot him.  Dkt. 16, ex. 31 at 104.  The other witness, Mr. Morris, testified "I guess it was the same dude [Red] on the bicycle" that did the shooting.  *Id.* ex. 34 at 100-101.  Gilbert argues "Mr. Morris was definite the person he believed was the shooter was not

Petitioner." Dkt. 10 at 6.  The record does not support this argument.  Instead, Mr. Morris on cross-examination admitted he had said nothing about Red when initially questioned by police, that he was not sure whether Red did the shooting and that he did not know "who pulled the trigger." *Id*. at 115, 119.

Thus while Gilbert is correct that no witness testified to seeing him shoot the victims, there was nonetheless substantial circumstantial evidence to support his convictions.  The circumstantial evidence that Gilbert shot the victims is not overcome by Gilbert's argument that Red was the shooter.  The two witnesses Gilbert relies on to support this argument did not testify that they actually saw Red shoot the victims.  Below said he initially believed Red had done the shooting but never said he actually saw Red shoot the victims.  Morris also said he thought Red had done the shooting but then admitted he did not know who "pulled the trigger."

Other than the beliefs of these two witnesses, there is no direct evidence that Red shot the victims.  There is also no circumstantial evidence Red shot the victims.  There is no evidence that Red had a grudge against the victims or that he was an ally to Gilbert and Clewis.  There is no evidence that he was involved in the scuffle between Clewis and the victims.  There is no evidence that Clewis and Gilbert asked for his help.  There is no evidence Red owned or possessed a .25 caliber gun.  Obviously the jury that convicted Gilbert heard all of the evidence and concluded that there were no reasonable doubts about Gilbert's guilt.

In sum, based on the evidence presented at trial, a rational trier of fact could have found Gilbert was the shooter beyond a reasonable doubt.  Accordingly, the Court concludes the state court's determination that the evidence was sufficient to support Gilbert's convictions was not contrary to or an unreasonable application of the *Jackson v. Virginia* standard, and that claim 1 should be dismissed.

**D.      Claim 3:  Right to an impartial jury**

Gilbert claims he was denied the right to be tried by an impartial jury.  He raises two separate arguments.  First, he argues juror 10 tainted the entire jury pool by making improper comments in front of the entire panel.  Second, he argues juror 8 was "in fact" biased and should not have been allowed to deliberate.  Dkt. 10 at 9.  As discussed below, the Court finds the state court of appeals' conclusion that Gilbert's Sixth Amendment rights to an impartial jury were not violated was not an unreasonable application of, or contrary to clearly established federal law, and that this claim should be dismissed.

**1.      Background**

Because resolution of Gilbert's claims is highly dependent on the facts of his case, the Court first reviews the state court's findings.  The state court of appeals summarized the facts regarding jurors 10 and 8 as follows:

> . . . during voir dire, the court asked whether any of the jurors had any bias or prejudice that would prevent a fair trial.  In response, Juror ten stated that, "[w]ith the number of things I have heard about in the news and read about in the news where very serious charges have been dropped for one reason or another, I feel if a prosecution's willing to undergo a three-week trial, they gotta feel they've got him cold." The court asked Juror ten whether he would be able to follow the instruction to presume Gilbert innocent and only convict if the State proved beyond a reasonable doubt every element of the crime charged.  Juror ten replied, "I probably can do it, but I would go in prejudice [sic] in favor of the prosecution."  Based on Juror ten's response, the court dismissed Juror ten for cause.
>
> Gilbert moved for a mistrial based on the statements of Juror ten. The court denied the motion but allowed defense to follow up and ask the other jurors about Juror ten's statements. "[I]f you want to ask further questions [about Juror ten's statement] I'm not going to foreclose you, and you can reference the comments the juror made if you think that's appropriate." During further questioning, defense counsel asked the jurors whether they "kind of" agreed with Juror ten's statements.
>
> . . .[Juror ten] said, if they got this far to do a three-week trial, they must

have him cold, and he looked at the prosecutor's table. So I guess I'd just like to hear from some of you, some may agree, but some of you may disagree, and in all candor, that's really what we want to know, we want to know how you feel.

So, could I have a quick show of hands how many kind of agree with number [ten]?

In response, many jurors disagreed with Juror ten, a number of jurors said they were neutral, and four jurors indicated they "kind of" agreed. Of these four, three were eventually excused.

[The following paragraph appears as a footnote] The four jurors were Jurors six, eight, twelve and fifty-eight. Juror six was excused for hardship after he informed the court that he could not miss two weeks of work. Defense counsel exercised a preemptory challenge for Juror twelve. Juror fifty-eight was dismissed for cause after he told defense counsel he had a number of friends at the Kent Police Department and that it would be difficult for him to overcome his bias toward police.

At the very end of the second day of voir dire, defense counsel asked, "is there anything any of you would like to bring up, to mention that's kind of been on your conscience on behalf of Mr. Gilbert before I conclude my examination?" In response, Juror eight said he thought he might have a bias toward law enforcement, but could set it aside. Defense counsel then asked Juror eight whether he thought he could still give Gilbert a fair trial and Juror eight stated that he could. Defense counsel did not challenge Juror eight for cause or use a preemptory challenge to dismiss Juror eight.

Dkt. 16, ex. 3.

Based on these facts, the state court of appeals concluded Gilbert's Sixth Amendment rights to an impartial jury were not violated stating:

Gilbert relies on *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1998), to argue that Juror ten's comments tainted the jury pool, denying him the right to an impartial jury. *Mach* is distinguishable.

. . .

Here, unlike the juror in Mach, Juror ten had no experience related to the case and based his belief that "they gotta feel they've got him cold" on what he had read in the news. And, unlike in Mach, Juror ten only made the statement one time. In addition, during questioning to determine the

impact of Juror ten's comment, the record does not indicate the statement negatively affected Gilbert's right to a fair trial.

Gilbert also argues Juror eight demonstrated actual bias and his constitutional right to an impartial jury was violated because Juror eight was allowed to deliberate.

If a biased juror is allowed to deliberate, the de-fendant is denied his constitutional right to trial by an impartial jury, requiring dismissal. *Gonzales*, 111 Wash. App. at 282, 45 P.3d 205. A juror demonstrates actual bias by "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging...." RCW 4.44.170(2). A prospective juror's expression of preference toward police testimony does not, standing alone, conclusively demonstrate bias. *Gonzales*, 111 Wash. App. at 281, 45 P.3d 205.

Gilbert argues that this case is analogous to *Gonzales*, where the court reversed and remanded for a new trial because a juror was allowed to deliberate who demonstrated unequivocal bias toward the State. *Gonzales*, 111 Wash. App. at 281, 45 P.3d 205. In *Gonzales*, a juror stated she was more likely to believe police testimony, repeated it several times, and responded that she did not know if she could presume the defendant, Gonzales, innocent. *Gonzales*, 111 Wash. App. at 278-79, 45 P.3d 205. This court re-versed, noting that the juror unequivocally admitted a bias regarding the police, believed the bias would affect her deliberations, did not know if she could presume that Gonzales was innocent in the face of officer testimony, and was never rehabilitated. *Gonzales*, 111 Wash. App. at 281, 45 P.3d 205.

Although Juror eight stated he had a slight bias toward law enforcement, unlike the juror in *Gonzales*, he unequivocally said that he believed he could give Gilbert a fair trial. Juror eight raised his hand after defense counsel asked "could I have a quick show of hands how many kind of agree with number [ten]?" But neither side asked Juror eight why he "kind of" agreed with the comments of Juror ten. At the very end of the second day of voir dire, defense counsel asked whether any of the jurors had anything they wanted to mention before concluding voir dire. Juror eight said that because of the software work he had done for law enforcement, "I kind of have a bias." But he said, "working on a good day I can, you know, I can put it aside and then keep an open mind. But in all honesty, on a bad day where I don't have the, you know, if I'm tired or whatever, it's gonna be gone, that's kind of my natural state because I feel like I've been working on products for kind of the State and the

prosecution. So I just want to let you know that, but I can put it aside, but I just wanted to clear my conscience." Defense counsel then asked Juror eight if he could still give Gilbert a fair trial and Juror eight assured the defense that he could. Gilbert did not ask the court to excuse Juror eight for cause or because he showed actual bias. And the record does not show he could.

## 2. Analysis

Gilbert argues juror 10's comments "if a prosecution's willing to undergo a three-week trial, they gotta feel they've got him cold" tainted the entire jury pool. As a criminal defendant, Gilbert is entitled to "a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). However, the jury need not be totally ignorant of the facts and issues involved. *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975). Rather a defendant is afforded an impartial jury so long as the jurors will conscientiously apply the law and find the facts. *Lockhart v. McCree*, 476 U.S. 162, 178 (1982). Where the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented in court, a criminal defendant has been afforded a fair jury. *See Murphy*, 421 U.S. at 800.

As a habeas petitioner, Gilbert is entitled to relief only if he can establish that the alleged trial error had a substantial and injurious effect or influence on the jury's verdict. *Musladin v. Lamarque*, 555 F.3d at 834 (*citing Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

There is no hard and fast rule to determine whether a habeas petitioner has suffered substantial and injurious prejudice requiring reversal of a criminal conviction where jurors are exposed to prejudicial statements. *See Rodriguez v. Marshall*, 125 F.3d 739, 744 (9th Cir. 1997). Rather the Court must weigh the nature of the extraneous information that has been introduced into deliberations. *Id*. For example, the potential for prejudice is heightened when a juror injects "objective extrinsic facts" regarding the accused because that juror becomes an unsworn witness

who is not subject to either confrontation or cross-examination. *Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997).

The record reveals that in Gilbert's case, the trial judge asked all of the potential jurors whether there is "anything whatsoever about the nature of these allegations that would cause you to start this trial with any biases or prejudices, either against the State of Washington or against Mr. Gilbert?" Dkt. 16, ex. 26 at 110-111.

In response to this question, juror 10 stated: "With the number of things I have heard about in the news and read about in the news where very serious charges have been dropped for one reason or another, I feel if a prosecution's willing to undergo a three week trial, they gotta feel they've got him cold." *Id*.

The trial judge then asked juror 10 "[a]re you saying that you cannot accept the legal instruction from me that you must presume this individual innocent and only convict of the State proves beyond a reasonable doubt every element of the crimes charged?" *Id*. at 111. Juror 10 responded "I probably can do it, but I would go in prejudiced in favor of the prosecution." *Id*. The trial judge then excused juror 10 for cause.

Gilbert argued in the state court of appeals that juror 10's comment tainted the entire jury pool, relying on *Mach v. Stewart*. However, the opinion juror 10 expressed stands in stark contrast to the juror's statements in *Mach*. In that case, the defendant was charged with sexual contact with a minor. *Mach*, 137 F.3d at 631. During voir dire, a juror told the other jurors she had worked for three years as a child protective services worker, had expertise in the area of child sexual abuse and that she had never been involved in a case in which the child's claim of sexual abuse had not been borne out. *Id*. at 633.

In contrast, juror 10 gave a personal opinion not supported by any facts or evidence. Juror

10 did not claim personal knowledge about Gilbert or the case, did not profess expertise or training to support his opinion, and did not inject any extraneous evidence about the case or Mr. Gilbert. His comment was brief and the prosecutor made no attempt to magnify it. Accordingly, the Court concludes that juror 10's statement did not taint the jury pool.

Additionally, after juror 10 was excused for cause, the trial judge granted defense counsel leave to question the entire jury pool about juror 10's statement. Dkt. 16, ex. 26 at 124-125. The answers given by the remaining jurors confirm the jury pool was not tainted.

Defense counsel asked the jurors "how many kind of agree with that [juror 10's comment]? *Id*. at 149. Four jurors raised their hands. Of the four, three were dismissed for cause. The fourth juror, number 8 told defense counsel he might have a bias toward law enforcement but could set it aside. *Id.* at 151.

Defense counsel also asked "[h]ow many of you just are somewhat neutral, it was a comment by a juror, and one way or another, doesn't matter, doesn't affect you?" *Id*. at 149. The remaining 27 jurors raised their hands. *Id.*

Defense counsel then began to ask individual jurors what they thought of juror 10's comments. Juror 7 said, "the amount of belief on the prosecutor's side that he has evidence doesn't mean he's guilty . . . I come here with an open mind." Juror 23 said, "we wouldn't be here if they didn't have evidence, that they believe they can convict him, but I don't think that makes him guilty." Juror 19 said, "this is a very serious offense so it's going to take a lot of time to get through it . . . that's my feeling." Juror 9 said, "I would hope they do believe they have him cold before they went out and accused him of it, but it's for us to decide whether he is or not." Juror 6 said, "I would think just the opposite, if the judge said that this trial would last about a week and not a month, then they probably have him cold . . . . "Juror 48 said, "I sat on four different criminal trials

and I've seen a couple different things happen, so I can't – I mean, anything could happen." *Id.* at 150-151. After eliciting these responses, defense counsel moved away from juror 10's comment and began another line of questioning. *Id.*

In sum, Gilbert has not established that juror 10's comment had a substantial and injurious effect or influence on the jury's verdict.

Gilbert also argues the Court should grant habeas relief because juror 8 was "in fact" biased and should not have been allowed to deliberate. Dkt. 10 at 9. The determination of whether a juror is actually biased is a question of fact, and thus accorded deference under 28 U.S.C. § 2254. *See Fields v. Woodford*, 309 F.3d 1095, 1103 (9th Cir. 2002). However, if it is determined a biased juror was present, that juror's presence is structural error, not subject to the harmless error analysis, and the defendant is entitled to a new trial. *See, e.g., Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc).

Actual bias, or bias in fact, is the existence of a state of mind that leads to an inference that the juror will not act with entire impartiality. *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). If a defendant can show that a juror "failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause," then a new trial should be granted. *United States v. Henley*, 238 F.3d 1111, 1121 (9th Cir. 2001).

In "extraordinary cases, courts may presume bias based on the circumstances." *Dyer*, 151 F.3d at 981 (citations omitted). The Ninth Circuit has stated, "we have implied bias in those extreme situations 'where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances,' . . . or where repeated lies in voir dire imply that the juror

concealed material facts in order to secure a spot on the particular jury." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007). Additionally, actual bias might be implied where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will. *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1062 (9th Cir. 1997).

Implied actual bias will be found only in truly extraordinary circumstances. *See United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977) (two jurors in a bank robbery trial were employees of a different branch of the bank that was robbed); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (In heroin conspiracy trial, a juror failed to disclose his children were in prison for heroin related crime).

Actual bias, however, will not be implied simply because a juror has some connection to the case. In *Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990) one of the jurors in a rape case stated she was a psychiatric social worker who was trained to deal with rape victims. The Court concluded "the circumstances did not warrant a presumption of bias as neither the juror nor a close relative had been a rape victim or rapist and there was no personal connection with the juror and the defendant or victim and the juror had no prejudicial information about the defendant himself." *Id.* at 529. *See also Fields* at 773 (no presumption of actual bias regarding juror who discloses that his wife was a victim of a crime similar to crime defendant was accused of).

The record does not support Gilbert's claim that juror 8 was actually biased or that the Court should presume the juror was actually biased. Juror 8 answered all questions honestly and openly. On the first day of jury selection, Gilbert's lawyer asked juror 8 if he had "relatives or friends who are in law enforcement?" Dkt. 16, ex. 26 at 151. Juror 8 admitted he did as his company develops software used to assist law enforcement crime scene and fingerprint analysis. *Id.* Juror 8 also said

his ability to sit on the case "depends on the evidence." *Id.* The next day, Gilbert's lawyer asked whether any prospective jurors wanted to bring up a matter that was on their "conscience." *Id.* ex. 27 at 116. Juror 8 stated:

> Yeah, I've thought about, I want to be transparent, but you were just kind of talking about bias, and I think just because of my work, the amount of stuff in my work as far as doing law enforcement work, software work, that I kind of had a bias. Just to be, in all honesty, working on a good day I can, you know, I can put it aside and then keep an open mind. But in all honesty, on a bad day where I don't have the, you know, if I'm tired or whatever, it's gonna be gone, that's kind of my natural state, because I feel I've been working on products for coming to the state had the prosecution. So I just want to let you know that, but I can put it aside, but I just wanted to clear my conscience.

*Id.*

In response, Gilbert's lawyer stated:

> Well, I appreciate that, and you'll keep that especially in mind, if it becomes necessary as it will many times we need to cross examine some police officers, sometimes it's only on one issue, sometimes it on several, but you'll keep in mind that you've got a, maybe a late edge there, and you'll keep track of that. You still think you could give Mr. Gilbert at their trial, though?

*Id.*

Juror 8 responded:

> Yes, yes, I believe I can, so - but I just wanted to make you aware of, I've just been wrestling with it, I just wanted to disclose about what I've been thinking about.

*Id.*

The record thus shows juror 8 to be open, honest and aware of the need to be fair and impartial. This conclusion is buttressed by Gilbert's acceptance of juror 8 to decide his case even though he could have excused the juror with a peremptory challenge. Dkt. 16, ex. 27 at 138. In sum, the record show there is no basis to conclude juror 8 was actually biased or biased in fact.

There is also no basis to presume juror 8 was actually biased based on the circumstances of the case. During voir dire, juror 8 told Gilbert's lawyer he did software work for law enforcement. However, there is no evidence that he worked with the law enforcement agency involved in the Gilbert case, or that he knew any of the police officers or experts called by the prosecution. Juror 8 had no personal connections to the prosecution's witnesses. There is thus reason to conclude that his work with law enforcement made it likely that he was actually biased in his deliberations.

There is also no evidence that juror 8's knowledge of law enforcement crime scene and fingerprint software improperly affected his deliberations. The prosecution's case was not based on fingerprints or crime scene analysis. There was no fingerprint evidence or crime scene evidence that proved Gilbert shot the victims. Instead, as the prosecution argued in closing, the case involves "looking at the motive, the connection to the gun, the hat, the inconsistent statements, the reasons why Frog acted the way he did, plus eye witnesses - - or the observations of the scene witnesses, it all adds up to one thing, and that one thing is that Kevin Gilbert, beyond a reasonable doubt, was the shooter." Dkt. 16, ex. 35 at 49-50.

Accordingly, the Court finds the state court of appeals' conclusion that Gilbert's Sixth Amendment rights to an impartial jury were not violated was not an unreasonable application of, or, contrary to clearly established federal law, and that this claim should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court recommends that Gilbert's amended § 2254 petition for writ of habeas corpus (Dkt. 10) be **DENIED** and this action **DISMISSED** with

///

///

///

prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 10th day of November, 2009.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge